UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,   )<br>  )<br>  Plaintiff,   )<br>  )<br>v.   )<br>  )<br>ROBERT BOSCH LLC   )<br>  )<br>  Defendant.   )<br>  )<br>  )<br>  )<br>  ) | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Affinity Labs of Texas, LLC ("Affinity Labs") for its causes of action against Defendant, Robert Bosch LLC ("Bosch"), states and alleges on knowledge and information and belief as follows:

### PARTIES

1. Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2. On information and belief, Bosch is a Michigan company organized under the laws of Delaware with its principal place of business at 3800 Hills Tech Drive, Farmington Hills, Michigan, 48331. Further on information and belief, Bosch is a subsidiary of a German corporation, Robert Bosch GmbH. Bosch is registered and actively engaged in business within the State of Texas, and maintains an agent for service of process

at Corporation Service Company, dba, SCS Lawyers Inco., 701 Brazos Suite 1050, Austin, Texas 78701.

## JURISDICTION

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

4.     This Court has personal jurisdiction over Bosch. Upon information and belief, Bosch has committed and continues to commit acts giving rise to this action within Texas and within this judicial district and Bosch has established minimum contacts within the forum such that the exercise of jurisdiction over Bosch would not offend traditional notions of fair play and substantial justice. For example, Bosch has committed and/or contributed to and continues to commit and/or contribute to acts of patent infringement in this judicial district. In conducting its business in Texas and this judicial district, Bosch derives substantial revenue from infringing products being sold, used, imported, and/or offered for sale.

## VENUE

5.     Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Bosch has committed acts within this judicial district giving rise to this action, and Bosch has and continues to conduct business in this judicial district, including one or more acts of selling, using, importing, and/or offering for sale infringing products or providing service and support to Bosch's customers in this District.

6.     Venue in the Eastern District of Texas is further proper because Affinity Labs is headquartered in Dripping Springs, Texas.

7. Venue in the Eastern District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

8. Venue in the Eastern District of Texas is also proper because of judicial economy. Judge Ron Clark presided over *Affinity Labs of Texas, LLC v. BMW North America, LLC, et al.*, Civil Action No. 9:08-cv-164. As part of that action the Court construed claims of the same patent asserted in the present action, U.S. Patent No. 7,324,833, in the Order Construing Claim Terms dated December 18, 2009 (Dkt. No. 326). Furthermore, Judge Ron Clark presided over *Affinity Labs of Texas, LLC v. Ford Motor Co.*, Civil Action No. 1:12-cv-00580-RC, *Affinity Labs of Texas, LLC v. General Motors Co.*, Civil Action No. 1:12-cv-00582-RC, and *Affinity Labs of Texas, LLC v. Samsung et al.*, Civil Action No. 1:12-cv-00557-RC. As part of those actions the Court construed claims of the same patent asserted in the present action, U.S. Patent No. 7,324,833, in the Orders Construing Claim Terms dated June 4, 2014 (*Samsung et al.* Dkt. No. 186), April 16, 2014 (*Ford* Dkt. No. 91), and April 16, 2014 (*GM* Dkt. No. 107).

## BACKGROUND

### Affinity Labs

9. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

10. Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

11. Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas A&M. Mr. White also graduated from the University of Temple Law School.

After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

12. Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least thirty-two separate United States patents.

13. On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 ("the '812 application") with the United States Patent and Trademark Office ("PTO").

14. The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device such as a smartphone at its center.

15. The '812 application also disclosed the ability to download music and playlists from an online store, or stream Internet radio, to the portable electronic device, and then connect the device to a second device such as an automobile with a display. As disclosed in the '812 application, the music available on the portable device can then be displayed and selected using controls on an automobile stereo system, and played through the speakers.

16. Mr. White and Mr. Imes made this disclosure in the '812 application over a year before the iPod was released in October 2001, approximately 3 years before the iTunes Store sold its first song, 7 years before the first iPhone was sold, 8 years before the App Store was launched, and 8 years before the functionality of having the music available on a portable device be displayed and selected using controls on an automobile stereo system and played through the speakers was available using an iPhone and some luxury vehicles. This

same connective functionality did not become available on Android phones until more than 9 years after Mr. White and Mr. Imes filed the '812 application.

17.     On January 29, 2008, the PTO issued United States Patent No. 7,324,833, entitled "System and Method for Connecting a Portable Audio Player to an Automobile Sound System" ("the '833 patent"), a copy of which is attached as Exhibit A. The '833 patent was issued from a continuation application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000 and issued on March 6, 2007 as United States Patent No. 7,187,947 entitled "System and Method for Communicating Selected Information to an Electronic Device" ("the '947 patent").

18.     The '833 patent ("the Asserted Patent") and other patents in the same patent family, have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.

19.     Affinity Labs holds legal title, by assignment, to the Asserted Patent.

### *Affinity Labs of Texas, LLC v. BMW N. Am., LLC, et al.*

20.     On August 27, 2008, Affinity Labs sued a number of defendants, including Hyundai Motor America, Inc.; Hyundai Motor Manufacturing Alabama, LLC (collectively, "Hyundai"); Kia Motors America, Inc. ("Kia"); and Volkswagen Group of America ("Volkswagen") in the Eastern District of Texas for patent infringement, including infringement of the Asserted Patent. Affinity Labs alleged that Hyundai, Kia, and Volkswagen infringed the '833 patent by manufacturing, using, marketing, offering for sale, and/or selling of select automobiles with audio systems designed to integrate a portable digital media device with the automobile's on-screen display and user interface.

21.     The Court, the Honorable Ron Clark presiding, held a jury trial from October 18-22 and October 25-28, 2010 with defendants Hyundai, Kia, and Volkswagen.

22.     During the trial Hyundai, Kia, and Volkswagen asserted that claims 28 and 35 of the '833 patent were invalid under 35 U.S.C. sections 102, 103 and/or 112.

23.     On October 28, 2010, the jury by unanimous verdict found that Volkswagen and Hyundai directly and contributorily infringed and induced infringement of claims 28 and 35 of the '833 patent. The jury awarded damages to Affinity Labs in the amount of $12,986,530.

24.     The jury rejected all of Volkswagen, Hyundai, and Kia's invalidity arguments and found that claims 28 and 35 of the '833 patent are not invalid.

25.     The jury also found that claims 28 and 35 of the '833 patent are not anticipated, and that claims 28 and 35 of the '833 patent are not obvious.

26.     On April 12, 2011, the Court ordered final judgment in favor of Affinity Labs in the amount of $12,986,530 in damages, $1,193,130 in pre-judgment interest, post-judgment interest calculated at the rate of 0.27%, and costs of court.

### *Affinity Labs of Texas, LLC v. Nissan*

27.     On November 21, 2013, Affinity Labs filed a Complaint in the Western District of Texas, Waco Division, against Nissan North America Inc. and Nissan Motor Co., Ltd. (collectively, "Nissan"). Affinity Labs' Complaint alleged that Nissan infringed Affinity Labs' patents, U.S. Patent No. 8,554,191 and U.S. Patent No. 8,588,680. (Case No. 6:13-cv-369). In that matter, on September 30, 2014, the Court partially granted a Federal Rule of Civil Procedure 12(c) motion filed by Nissan as to Bosch products. *See* Exhibit B (publicly filed docket text for Dkt. No. 84).

28.     Affinity Labs had previously entered into an agreement with Nissan related to Nissan's then future use of components to be supplied by Bosch. That Agreement included a limited covenant-not-to-sue to Nissan. Under the Agreement, Affinity Labs expressly maintained all rights to sue Bosch based on infringement by Nissan vehicles with Bosch-supplied components:

> To the extent that Affinity alleges in the future that the automobiles referenced in paragraph (h) above infringe the '833 Patent [U.S. Patent No. 7,324,833] or U.S. Patent No. 7,486,926 ("the '926 Patent"), Affinity covenants that it will not sue Nissan and/or a parent/subsidiary/affiliate of Nissan based on that alleged infringement nor seek to recover any remedy from Nissan and/or a parent/subsidiary/affiliate of Nissan for that alleged infringement, <u>on the condition that Affinity maintains all rights to sue Bosch (which Affinity represents has not entered into any type of license or agreement with Affinity) for any such alleged infringement and that Affinity may recover all remedies against Bosch the same as if this covenant did not exist. Nothing about this covenant is intended to nor should be construed as granting any rights (by waiver, exhaustion, license, or otherwise) to Bosch, and nothing about this covenant is intended to nor should be construed as a license or waiver of any rights that would diminish Affinity's ability to pursue and secure the same remedies against Bosch as if this covenant did not exist</u>.

Exhibit C, ¶ 2 (emphasis added).

29.     As a result, and because on information and belief, Bosch manufactures, uses, sells, offers to sell, markets, imports, has manufactured, used, sold, offered to sell, marketed, and/or imported products that infringe and/or contributorily infringe or have infringed and/or contributorily infringed the Asserted Patents, Affinity Labs brings this action to seek damages and injunctive relief arising out of Bosch's infringing acts.

## COUNT I

### Contributory Infringement of U.S. Patent No. 7,324,833 by Bosch

30. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

31. On information and belief, Bosch had actual knowledge of the '833 patent since at least January 15, 2014, when Bosch received a third-party subpoena specifically referencing the '833 patent and referencing Affinity Labs' patent litigations regarding the Asserted Patent. Such notice included at least that Bosch's technology was accused in Affinity Labs' litigation against General Motors, alleging infringement of the '833 patent (*Affinity Labs of Texas, LLC v. General Motors LLC*, Case No. 1:12-cv-582 (E.D. Tex.)). Moreover, Bosch has had notice of the '833 patent at least as of the filing date of this complaint.

32. On information and belief, Bosch, with actual knowledge of the '833 patent before the filing of this complaint, actively contributed to the infringement and actively continues to commit such contributory infringement of the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(c). For example, on information and belief, Bosch has contributed to and is contributing to infringement of the '833 patent by selling Bosch's Integrated Head Unit (IHU) technology, like the LCN2 to its customers, used at least within the 2015 Nissan XTERRA —the use of which by Bosch's customers has directly infringed and is directly infringing the '833 patent.

33. Upon information and belief, at least Bosch's LCN2 IHU technology, including for example, the ability to pair with a portable device, such as a smartphone,

constitutes a material part of the inventions claimed in the '833 patent, and has no substantially non-infringing uses.

34. Bosch's actions of, inter alia, making, importing, using, offering for sale, and/or selling such products constitutes infringement of the '833 patent, which was duly issued by the United States Patent and Trademark Office and is presumed valid.

35. Bosch continues to specifically intend for and encourage its customers and end-users to use its products in a manner that directly infringes the claims of the '833 patent.

36. Bosch has been aware since at least January 15, 2014 that its actions constitute infringement of the '833 patent, and that the '833 patent is valid. Despite Bosch's knowledge, on information and belief, Bosch has not made any changes, to date, to the functionality, operations, marketing, advertising, sales, or technical support for the relevant operation of its accused products, and has not provided its users and/or customers with instructions on how to avoid infringement of the '833 patent. Instead, Bosch has continued to, and still is continuing to, make, use, offer for sale, and/or sell accused products that when used as Bosch specifically instructs and intends, practice claims of the '833 patent.

37. Upon information and belief, Bosch's infringement of the '833 patent has been, and continues to be willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '833 patent and thus acting in reckless disregard of Affinity Labs' patent rights.

38. Bosch does not have a license or permission to use the claimed subject matter in the '833 patent.

39. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Bosch's infringement of the '833 patent.

40. Bosch will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

41. Affinity Labs is entitled to recover from Bosch the damages sustained by Affinity Labs as a result of Bosch's wrongful acts in an amount subject to proof at trial.

## DEMAND FOR TRIAL BY JURY

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Affinity Labs prays for the following relief:

1. A declaration that Bosch is liable for contributory infringement of the '833 patent;

2. An order enjoining Bosch from infringing the '833 patent;

3. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing compulsory license or such other relief as the Court deems appropriate;

4. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for Bosch's infringement of the '833 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

5. An equitable accounting of damages owed by Bosch for the period of infringement of the '833 patent, following the period of damages established by Affinity Labs at trial;

6. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

      7.    An award of costs, expenses, and disbursements; and

      8.    Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated: <u>October 1, 2014</u>      Respectfully submitted,

By: <u>/s/ Charles W. Goehringer, Jr.</u>

**Germer P.L.L.C.**
Lawrence Louis Germer
(TX Bar # 07824000)
Charles W. Goehringer, Jr.
(TX Bar # 00793817)
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas 77701
Telephone: (409) 654-6700
Fax: (409) 835-2115
llgermer@germer.com
cwgoehringer@germer.com

**Robins, Kaplan, Miller & Ciresi L.L.P.**
Ronald J. Schutz (MN Bar No. 130849)
(Eastern District of Texas Member) (Lead Counsel)
Cyrus A. Morton (MN Bar No. 287325)
(Eastern District of Texas Member)
Daniel R. Burgess (MN Bar No. 389976)
(Eastern District of Texas Member)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine A. Tietz (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
RJSchutz@rkmc.com
CAMorton@rkmc.com
DRBurgess@rkmc.com
STShapiro@rkmc.com
KATietz@rkmc.com

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2014, I caused a true and correct copy of this document (Complaint for Patent Infringement) to be served on all counsel of record via Electronic Case Filing (ECF) pursuant to Local Rule CV-5(a).

Dated:  October 1, 2014                          /s/ Charles W. Goehringer, Jr.
                                                 Charles W. Goehringer, Jr.